Travis A. Knobbe (VSB #77914)
SPILMAN THOMAS & BATTLE, PLLC
310 First Street, SW, Suite 1100
Roanoke, VA 24011
Telephone:      (540) 512-1800
Facsimile:      (540) 342-4480

*Counsel for Delisa Barnes*

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMF BOWLING WORLDWIDE, INC., *et. als.,*[1] | Case No.: 12-36495 (KRH) Jointly Administered |
| Reorganized Debtors. |  |

## MOTION BY DELISA BARNES FOR DECLARATION THAT DISCHARGE INJUNCTION IS NOT APPLICABLE OR, IN THE ALTERNATIVE, FOR EXTENSION OF TIME WITHIN WHICH TO MAKE APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Delisa Barnes ("Barnes") states as follows for her motion (the "Motion") seeking entry of an

order (a) in the form attached hereto as **Exhibit 1**, to declare that the discharge injunction is not

applicable to Barnes' claim for damages incurred post-petition pre-confirmation where Barnes was

not given notice of the Administrative Claims Bar Date despite being a known claimant at the time

such notice was given; or, in the alternative, (b) in the form attached hereto as **Exhibit 2**, to extend

---

[1] The Reorganized Debtors in these Chapter 11 Cases include: AMF Bowling Worldwide, Inc.; 300, Inc.; American Recreation Centers, Inc.; AMF BCH LLC; AMF Beverage Company of Oregon, Inc.; AMF Bowling Centers Holdings Inc.; AMF Bowling Centers, Inc.; AMF Bowling Mexico Holdings, Inc.; AMF Holdings, Inc.; AMF WBCH LLC; AMF Worldwide Bowling Centers Holdings Inc.; Boliches AMF, Inc.; Bush River Corporation; King Louie Lenexa, Inc; Kingpin Holdings, LLC; and Kingpin Intermediate Corp.

the time within which to make application for payment of an administrative expense claim in the

amount of the damages sustained by Barnes as a result of her injuries for a period of sixty (60) days

following entry of the order:

### Jurisdiction and Authority

1.      On November 12, 2012 (the "Petition Date"), AMF Bowling Worldwide, Inc. (the

"Debtor") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

2.      On that same date, various related entities each filed their own petitions under

Chapter 11 in this Court.

3.      On November 14, 2012, this Court entered an Order [Doc 55] authorizing the joint

administration of all of the related Chapter 11 cases under Case No. 12-36495.

4.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.[2]

5.      Venue is proper pursuant to 28 U.S.C. § 1409 because the proceeding arises in and is

related to the pending Chapter 11 cases of the Debtor.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.      The relief requested herein is predicated upon §§ 105, 503(a), 524(a), and 1141(d) of

the Bankruptcy Code and upon Bankruptcy Rule 9006(b).

8.      This Motion is supported by the Declaration of David P. Kashani, Esq., which

Declaration is attached as **Exhibit 3**.

---

[2] For the avoidance of doubt, Barnes asserts only that this Court has jurisdiction to determine
whether her claim is subject to the discharge injunction and whether, if the claim is subject to the
discharge injunction, Barnes may apply for payment of such claim as an administrative expense of
the Debtor. If such claim is objected to, however, Barnes reserves the right to challenge this Court's
jurisdiction to enter an order adjudicating the merits of the underlying claim.

### Factual and Procedural Background

9.      On May 26, 2013, over six (6) months after the Petition Date, Barnes suffered a compound fracture of her ankle at the Debtor's AMF World on Wheels # 285 Location in Los Angeles, California, after tripping on defective flooring at that location.

10.     The injuries sustained by Barnes were substantial, and she has undergone two surgeries and will undergo at least one further surgery to repair the damage caused by the Debtor's negligence.

11.     The injuries were sustained while Barnes was a patron of the Debtor's ongoing post-petition business activities.

12.     Barnes engaged David Kashani, an attorney in Beverley Hills, California, to pursue her claim resulting from those injuries.

13.     Mr. Kashani sent a letter via certified mail to AMF Bowling Centers Inc. at 7313 Bell Creek Road, Mechanicsville, Virginia 23111 on June 17, 2013 notifying the Debtor of Barnes' injury and claim.  A true and accurate copy of this letter with the returned green card is attached as **Exhibit 4**.

14.     The letter was received by the Debtor on June 21, 2013, as indicated by the "green card" returned to Mr. Kashani's office.

15.     The notice letter was also sent to the World on Wheels location where Barnes sustained her injuries.

16.     After receiving notice of the claim, the Debtor filed their Third Amended Plan [Doc 1023] on June 24, 2013.

17.     The Third Amended Plan was confirmed by Order entered June 25, 2013 [Doc 1049].

18.     The Debtor then filed a Notice of Entry of Order on July 2, 2013 [Doc 1069], which Notice included the deadline for the filing of Administrative Claims.  Pursuant to that Order, the Administrative Claims Bar Date was August 15, 2013.

19.     The Debtor filed thirteen (13) separate certificates of service between July 10, 2013, and December 2, 2013, identifying all parties that received the Notice of Entry of Order that included the Administrative Claims Bar Date.

20.     Neither Barnes' name nor the name of her counsel appeared as a recipient of the Notice of Entry of Order by mail despite the fact that she was a known creditor of the Debtor by the time the Debtor mailed its notices of the Administrative Claims Bar Date.

21.     The Debtor also published the Notice of Entry of Order in *The Wall Street Journal* on July 12, 2013.  *See* Doc 1366.

22.     Despite the fact that the Debtor did not include Barnes on its list of mail recipients of the Notice of Entry of Order, the Debtor did forward the claim to its insurance carrier, ESIS, and ESIS, in turn, sent claim forms seeking further information from Barnes to Mr. Kashani on August 19, 2013, just four (4) days after the Administrative Claims Bar Date.  A true and accurate copy of this response is attached as **Exhibit 5**.

23.     Neither the Debtor nor ESIS informed Barnes or Mr. Kashani of the pending bankruptcy of the Debtor.

24.     In fact, ESIS, as agent of the Debtor, discussed Barnes' claims with Mr. Kashani on at least five to seven separate occasions between August 19, 2013, and April 30, 2014, without ever mentioning the fact that the Debtor had taken bankruptcy.

25.     Suddenly, on May 1, 2014, after over nine (9) months of communications between Barnes' counsel and the Debtor's agent ESIS, counsel for the Debtor sent Mr. Kashani a letter asserting that the discharge injunction barred Barnes' claims and that the Debtor would seek

appropriate sanctions if Barnes did not cease and desist from pursuing her claims.  A true and accurate copy of this letter is attached as **Exhibit 6**.

26.     Counsel for the Debtor then allowed Mr. Kashani to negotiate directly with the Debtor's risk managers to try and resolve the claim, giving Mr. Kashani a deadline of June 5, 2014, to resolve the claims.

27.     These discussions have unfortunately been fruitless, and, as a result, it appears that Barnes can only liquidate her claim with court intervention.

## RELIEF REQUESTED AND ARGUMENT

*I.*     *The Discharge Injunction does not apply because Barnes was a known claimant without notice of the filing, Plan, Confirmation Order or Administrative Claims Bar Date.*

28.     In the case of *Reading Company v. Brown*, the United States Supreme Court held that courts must treat "tort claims arising during an arrangement [a plan of reorganization] as actual and necessary expenses" and consider such claims to be administrative expenses of the estate.  391 U.S. 471, 482 (1968).

29.     This Court has previously observed that holding and accordingly treated post-petition tort claims as administrative expenses.  *See SunTrust Bank v. Roberson (In re Baseline Sports)*, 393 B.R. 105, 130 (Bankr. E.D. Va. 2008); *see also In re U.S. Airways, Inc.*, 365 B.R. 624, 628 n. 8 (Bankr. E.D. Va. 2007).

30.     As a result, Barnes' claim arising out of her post-petition injuries and resulting from the negligence of the Debtor is entitled to priority treatment as administrative expense of the Debtor's estate.

31.     Based on the fact that confirmation of a plan enjoins enforcement of such claims (other than through the means specified in the plan) pursuant to 11 U.S.C. § 1141(d), this Court has observed quite clearly that: "fundamental due process *requires* that creditors be given notice of the

commencement of the case *and of the claims bar date.*" *In re U.S. Airways, Inc.*, 2005 WL 3676186

(Bankr. E.D. Va. Nov. 21, 2005) (emphasis added).

32.    In that case, this Court considered the type of notice that was required to be given to

creditors and made a bright-line distinction between known and unknown creditors.

33.    Relying on the Supreme Court decision in *City of New York v. New York, New Haven*

*& Hartford R.R. Co.*, 344 U.S. 293 (1953), this Court observed that the Supreme Court established a

precedent that absolutely requires a debtor to give notice of the claims bar date *by mail* to known or

reasonably ascertainable creditors. *In re U.S. Airways, Inc.*, 2005 WL 3676186 at *3; *see also In re AMF*

*Bowling Worldwide, Inc.*, 2013 WL 5575470, *3 (Bankr. E.D. Va. Oct. 9, 2013) ("Creditors that the

Debtor either 'actually knows' or who are 'reasonably ascertainable' must be given *actual notice* in

order to satisfy the *Mullane* 'reasonably calculated' notice requirement.") (citing *In re J.A. Jones, Inc.*,

492 F.3d 242, 249 (4th Cir. 2007)) (emphasis added).

34.    In fact, in the *New York* decision relied on by this Court, the Supreme Court held

that known creditors must receive *actual mail notice* of the claims bar date even when those creditors

know about the bankruptcy proceeding. *City of New York*, 344 U.S. at 296-97.

35.    Here, Barnes—who had absolutely no knowledge of the Debtor's bankruptcy

proceedings— mailed a notice of claim arising out of an injury that occurred on the Debtor's

premises on May 26, 2013, to the Debtor on June 17, 2013, which notice was received by the

Debtor on June 21, 2013.[3]

---

[3] The Debtor, of course, is "charged with knowledge of the obligations it has incurred as an ordinary
cost of doing business, whether those obligations were incurred prepetition or post-petition."
*Wallach v. Frink America, Inc. (In re Nuttall Equipment Co., Inc.)*, 188 B.R. 732, 735 (Bankr. S.D.N.Y.
1995).

36.    This letter was sent to the corporate headquarters of the Debtor and this Court has observed that properly mailed notice triggers a common law presumption that proper notice was given. *In re U.S. Airways, Inc.,* 2005 WL 3676186 at *4 n. 7.

37.    Both the mailing and the receipt of this notice of claim occurred prior to the confirmation hearing on June 25, 2013, the filing of the Notice of Entry of Order with this Court on July 2, 2013, the filing of the first certificates of service of that Notice on July 10, 2013, and the date of publication of the Administrative Claims Bar Date on July 12, 2013.

38.    There is no doubt then that Barnes was a known claimant of the Debtor prior to the Debtor's giving notice to its creditors of the Administrative Claims Bar Date.

39.    As such, constitutional due process *required* the Debtor to provide actual mail notice to Barnes, both pursuant to this Court's precedent and the binding Supreme Court precedent established in the *City of New York* case.

40.    Ultimately, the Supreme Court held that the claims and liens of the City of New York were not discharged precisely because proper notice was not given. *City of New York*, 344 U.S. 293; *see also In re U.S. Airways, Inc.,* 2005 WL 3676186 at *3 - *4 (observing lower courts following *City of New York* and holding that creditors' claims were not discharged where proper notice has not been given).

41.    Additionally, just as it is clear that claims of pre-petition creditors that are not provided with notice of a pending bankruptcy are not discharged, it is also clear that the claims of known post-petition creditors who do not receive actual mail notice are also not discharged. *Wallach*, 188 B.R. at 735.

42.    The concerns expressed in *City of New York* and *In re U.S. Airways* are of course an extension of the Supreme Court's long-observed principle that, unless a party is accorded

constitutionally-required due process, then the proceeding cannot be binding on that party. *See City of New York, supra; see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

43.    Because Barnes, as a known creditor of the Debtor, was not given the constitutionally-required notice of the Administrative Claims Bar Date, the discharge injunction is not applicable to her claim.

II.    *Even if the claim would be subject to the discharge injunction, Barnes should be granted leave to tardily file an application for payment of an administrative expense claim arising out of her post-petition injuries.*

44.    While the due process requirements discussed above are unwavering, Barnes requests alternatively[4] that this Court permit Barnes to file a tardy application for the payment of an administrative expense claim arising out of her post-petition injuries.

45.    11 U.S.C. § 503(a) allows a creditor to tardily file a request for payment of an administrative expense "if permitted by the court for cause."

46.    As numerous courts have recognized, the Bankruptcy Code does not define "cause". *In re Gurley*, 235 B.R. 626, 632 (Bankr. W.D. Tenn 1999) (In discussing 503(a), the Court observed: "The Code does not specify what 'cause' could be shown that would permit a tardily filed request for payment of an administrative expense."); *see also In re marchFirst, Inc.*, 448 B.R. 499, 507 n. 6 (Bankr. N.D. Ill. 2011) (summarizing case law considering the appropriate standard for determining whether an administrative expense claim may be tardily filed).

47.    In general, however, those courts have reasoned that the Bankruptcy Code left "cause" as used in 503(a) intentionally undefined and vague to allow courts to use discretion depending on the circumstances.

---

[4] Because the Supreme Court unequivocally provides that known creditors must have received actual mail notice in order for a proceeding in this Court to bind them, this count is plead alternatively only and need only be analyzed if this Court finds that Barnes was an unknown claimant prior to the administrative claim bar date.

48.     Moreover, while some courts have conflated the term "cause" with the "excusable neglect" standard found in Bankruptcy Rule 9006(b), at least one district court has expressly rejected this view as a matter of statutory interpretation. *In re Heartland Steel, Inc.,* 2003 WL 23100035, *3 (S.D. Ind. Dec. 16, 2003) ("Different words ordinarily communicate different meanings.  In fact, in the federal court rules dealing with extensions of time, the term 'excusable neglect' has been held to have a narrower scope than the phrase 'good cause.'").

49.     As the court in *Heartland Steel* observes, even Rule 9006(b) treats the terms "cause" and "excusable neglect" separately.

50.     The *Heartland Steel* rationale is therefore supported by the plain language of 503(a) and Rule 9006(d) and by the basic canons of statutory interpretation.

51.     Here, Barnes gave the Debtor notice of her claim resulting from the injury suffered just three (3) weeks after sustaining the injury.  The notice was sent to the Debtor's corporate headquarters, and it was sent by certified mail.

52.     Such notice was no doubt received and understood by the Debtor, as the Debtor forwarded the same to its agent/insurance carrier which then responded to Barnes' June 17, 2013 letter.

53.     The Debtor chose to ignore the notice of claim for bankruptcy purposes and did not provide Barnes with notice of the pending confirmation hearing or notice of the approaching Administrative Claims Bar Date despite the fact that she was a known creditor with a post-petition tort claim that would be entitled to administrative expense priority.

54.     In fact, the Debtor went further.  Through their agent insurance carrier, the Debtor discussed the claim with Barnes between August 19, 2013 and April 30, 2014.  At no point in this nine (9) month period (during which counsel for Barnes discussed the claim with the Debtor's agent

at least 5 – 7 times) did either the insurance carrier or the Debtor inform Barnes of the pending bankruptcy case.

55.     Then, suddenly, on May 1, 2014, Barnes' counsel received a letter from counsel for the Debtor first informing Barnes of the discharge injunction and pending bankruptcy case.

56.     As a result of the Debtor's own inaction, Barnes was prevented from meeting the deadlines set forth in the Debtor's Confirmed Plan.

57.     Because Barnes' claim was entitled to administration expense priority, the Debtor's conduct in this regard is egregious and certainly demonstrative of the "cause" contemplated by 503(a) to permit Barnes to apply for payment of her administrative expense.

58.     Moreover, even if Barnes is required to show "cause" under the "excusable neglect" standard, she can also meet this burden.

59.     The excusable neglect "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Associated Ltd. Partnership*, 507 U.S. 380, 395 (1993) (footnote omitted).

60.     In *Pioneer*, the Supreme Court held that a lower court should consider "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

61.     Here, the Debtor does not suffer prejudice because it received *actual* notice of the claim pre-confirmation, and it was thus within the Debtor's purview to factor in the potential loss as a result of the claim when advancing its Third Amended Plan filed on June 24, 2013.

62.     Additionally, because the Debtor is insured, the claim should have little impact on the pending bankruptcy. Even if there would be an impact as a result of any coinsurance or self-retention limits the Debtor would be required to meet, the impact was, again, within the sole

province of the Debtor to weigh upon advancing its Third Amended Plan and upon deciding not to add Barnes to the list of mail recipients of the Administrative Claims Bar Date.

63.     There is little delay between the Debtor's first notifying Barnes of the proceeding (May 1, 2014) and the date of the filing of this Motion.  Any delay between the Administrative Claim Bar Date and the date of the filing of this Motion was caused solely by the Debtor.

64.     Finally, Barnes acted in good faith in proceeding to negotiate with the Debtor's insurance carrier the amount of the claim.  Barnes' counsel had discussions with the insurance carrier for over nine (9) months without knowledge of the present proceedings.

65.     As a result, under either the "for cause" or the "excusable neglect" standard, Barnes should be permitted to tardily file an application for payment of administrative expense.

66.     However, because Barnes' claim has not yet been liquidated and Barnes continues to incur ongoing medical expense (she has another surgery scheduled for June 2014), this Court should permit Barnes an additional period of sixty (60) days from entry of an order to file such application while reserving the right, if Barnes' claim is objected to, to seek actual payment once the claim has been fully liquidated by a court of competent jurisdiction.

WHEREFORE, for the reasons set forth herein, Barnes respectfully requests that this Court enter an Order either (a) declaring that the discharge injunction is not applicable to her claim; or (b) allowing Barnes to tardily file an Application for Payment of Administrative Expenses.  Barnes seeks such other relief as is just and proper.

## NOTICE OF MOTION AND HEARING

Delisa Barnes has filed papers with the court to obtain entry of an order either declaring that the discharge injunction is not applicable to her claim or allowing her to tardily file an application for payment of administrative expenses.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one, in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

Pursuant to Local Bankruptcy Rule 9013-1, if you do not want the Court to grant the relief sought in the motion, or if you want the Court to consider your views on the motion, you should:

1.    File a response with the Court and serve it on the parties listed below no later than seven (7) days before the scheduled hearing date noted below. **Unless a written response is filed and served within such time, the Court may deem opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing.** If you mail a response to the motion, you must mail it early enough so the court will **receive** it on or before the date stated above. If mailed, any response should be sent to the following address: **Clerk of Court, United States Bankruptcy Court, 701 East Broad Street, Suite 4000, Richmond, VA 23219.**

2.    Attend the scheduled hearing to be held on **July 22, 2014, at 2:00 p.m.,** in Courtroom 5000, United States Bankruptcy Court, 701 East Broad Street, Richmond, VA 23219. **If no timely response has been filed opposing the relief requested, the court may grant the relief without holding a hearing.**

A copy of any written response must be mailed to the following persons:

Travis A. Knobbe, Esq.
Spilman Thomas & Battle, PLLC
Post Office Box 90
Roanoke, Virginia  24002-0090

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.**

DATED: June 4, 2014                    DELISA BARNES

                                       By:/s/ Travis A. Knobbe
                                       SPILMAN THOMAS & BATTLE, PLLC
                                       Travis A. Knobbe, Esq. (VSB #77914)
                                       310 First Street, SW, Suite 1100
                                       Roanoke, VA 24011
                                       Telephone:    540.512.1800
                                       Facsimile:    540.342.4480
                                       E-mail: tknobbe@spilmanlaw.com
                                       *Counsel for Delisa Barnes*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 4, 2014, a true and correct copy of the foregoing was served on any party entitled to receive electronic notice in this case and was served pursuant to the Court's ECF noticing system and by U.S. Mail to all parties on the Core-2002 List attached hereto as **Exhibit 7**.[5]

                              /s/ Travis A. Knobbe

---

[5] Pursuant to the Court's December 12, 2012, Order Establishing Certain Notice, Case Management and Administrative Procedures [Doc 206], the undersigned is not including Exhibit 7 in the Motion as served on the recipients via U.S. Mail.