IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE:     AMF BOWLING WORLDWIDE, INC., <br> *et al.*, <br>        Reorganized Debtors. | | Case No. 12-36495-KRH <br> Chapter 11 <br> Jointly Administered |

EMIKO BOARD,

       Movant,

v.                                                                                         Contested Matter

AMF BOWLING WORLDWIDE, INC.,
*et al.*,

       Respondent.

## MEMORANDUM OPINION

Before the Court in this Contested Matter is the Motion of Emiko Board (the "Movant" or "Board") for Declaration that Discharge Injunction Is Not Applicable or, in the Alternative, for Extension of Time Within Which to Make Application for Payment of Administrative Expense Claim (the "Motion") filed against the Reorganized Debtors,[1] AMF Bowling Worldwide, Inc. (the "Reorganized Debtors" or "AMF"). A hearing was conducted on the Motion on November 5, 2014 (the "Hearing"), to consider the parties' arguments. Two primary issues were presented to the Court at the Hearing: (i) whether the Movant received constitutionally sufficient notice of the Administrative Claims Bar Date; and (ii) if she did,

---

[1] The Reorganized Debtors in the Chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number include: AMF Bowling Worldwide, Inc. (3272); 300, Inc. (3632); American Recreation Centers, Inc. (1151); AMF BCH LLC (9642); AMF Beverage Company of Oregon, Inc. (4960); AMF Bowling Centers Holdings Inc. (1697); AMF Bowling Centers, Inc. (1662); AMF Bowling Mexico Holding, Inc. (7931); AMF Holdings, Inc. (5037); AMF WBCH LLC (9643); AMF Worldwide Bowling Centers Holdings Inc. (1641); Boliches AMF, Inc. (9631); Bush River Corporation (7033); King Louie Lenexa, Inc. (0814); Kingpin Holdings, LLC (5411); and Kingpin Intermediate Corp. (5447).

whether the Movant should be granted an extension of time to file an application for payment of her administrative expense claim.

At the conclusion of the Hearing, the Court informed the parties that it was taking this matter under advisement. After examination of the applicable statutory authority, case law, pleadings, and the arguments of counsel presented at the Hearing, the Court finds: (i) Board is an unknown creditor, and as such she received constitutionally sufficient notice of the Administrative Claims Bar Date; and (ii) the Movant is not entitled to an extension of time to file her administrative claim as she is unable to establish that her failure to timely-file her administrative expense claim was due to excusable neglect. This memorandum opinion sets forth the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[2]

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

## Factual and Procedural Background

On November 13, 2012 (the "Petition Date"), the Reorganized Debtors filed these voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").[3] On November 14, 2012, the Court entered an order authorizing the joint administration

---

[2]  Bankruptcy Rule 9014 makes Bankruptcy Rule 7052 applicable to this contested matter.

[3]  11 U.S.C. §§ 1101–1174. All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq.*

2

of these bankruptcy cases.[4] On that same date, the Court also entered an order authorizing Kurtzman Carson Consultants LLC to serve as notice, claims, and balloting agent for the Reorganized Debtors during the administration of the consolidated cases. On June 25, 2013, the Court confirmed the Reorganized Debtors' Third Modified Joint Plan of Reorganization (the "Plan"). The Plan subsequently became effective on July 1, 2013 (the "Effective Date").

Article II.A of the Plan requires that all administrative claims, including those of any plaintiff who believes it may hold a claim against the Reorganized Debtors that arose after the Petition Date, but before the Effective Date, must be filed no later than forty-five days following the Effective Date, which was August 15, 2013 (the "Administrative Claims Bar Date"). As required by the Court's June 25, 2013 Confirmation Order (the "Confirmation Order), the Reorganized Debtors published notice of the Plan's Effective Date in the July 12, 2013 issues of the *Wall Street Journal* and the *Richmond Times Dispatch* (the "Notice of Effective Date"). The Notice of Effective Date clearly stated the Administrative Claims Bar Date was August 15, 2013, and provided notice of the proper procedure for filing administrative claims in the Reorganized Debtors' bankruptcy cases.

Both the Plan and the Confirmation Order provide that a post-petition creditor that fails to file an administrative claim before the Administrative Claims Bar Date is forever barred from recovering from the Reorganized Debtors on account of the untimely-filed administrative claim. Article II.A of the Plan provides:

> Holders of Allowed Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such [Administrative Claims Bar D]ate shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.

---

[4] *See* Fed R. Bankr. P. 1015(b).

3

The Confirmation Order likewise provides that confirmation of the Plan operates as a discharge and injunction as to all claims arising prior to the Effective Date. Article VIII.B of the Plan further provides:

> Pursuant to section 1141(d) of the Bankruptcy Code . . . the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action that arose prior to the Effective Date of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date. . . .

Finally, Article VIII.G of the Plan states that discharge operates as an injunction against any litigation regarding all disallowed claims.

On January 27, 2013, just two months following the Petition Date, but more than five months prior to the Effective Date, the Movant was struck by a vehicle operated by an intoxicated minor who was allegedly served alcohol at a bowling alley operated by AMF in Tarrant County, Texas (the "Tarrant County AMF Bowling Alley"). This incident prompted the Texas Alcoholic Beverage Commission (the "TABC") to launch an investigation into the Tarrant County AMF Bowling Alley beginning in March 2013 (the "Investigation"). The Investigation was limited to whether AMF sold alcohol to a minor and, if so, how the incident might impact the status of the liquor license held by the Tarrant County AMF Bowling Alley. The TABC Investigation did not concern any liability the underage minor might have to Board or any liability the Tarrant County AMF Bowling Alley might have to Board. The TABC closed its Investigation in April 2013.

Almost a year later, on March 18, 2014, Board filed suit in the County Court at Law No. 3 in Tarrant County, Texas against AMF alleging several causes of action arising out of the January, 27, 2013 accident (the "State Court Action"). Because Board's causes of action arose after the Petition Date, but before the Effective Date, her claims are administrative claims under

4

section 503 of the Bankruptcy Code and subject to the Administrative Claims Bar Date. 11 U.S.C. § 503. On April 14, 2014, AMF filed a Motion to Dismiss the State Court Action (the "Motion to Dismiss the State Court Action"). Later, on July 23, 2014, AMF filed a Motion for Summary Judgment in the State Court Action. Both motions essentially assert that Board's claims had been discharged because she failed to file an administrative claim prior to the Administrative Claims Bar Date. Board filed a response to AMF's motions and the Texas state court held a hearing on these motions on September 4, 2014. Following this hearing, the Texas state court entered an order on September 17, 2014 staying the State Court Action until Board had undertaken the appropriate measures in this Court to determine if she was entitled to assert her claims against AMF. The State Court Action remains on hold pending the resolution of this issue in AMF's bankruptcy case.

**Analysis**

Board's Motion presents two primary issues for the Court to resolve. First, the Court must determine whether the Movant received constitutionally sufficient notice of the Administrative Claims Bar Date, and therefore whether the Administrative Claims Bar Date acts as an injunction preventing the Movant from asserting her untimely-filed administrative expense claim against the Reorganized Debtors. Second, if the Court finds that the Movant did receive constitutionally sufficient notice of the Administrative Claims Bar Date, whether her failure to timely file her administrative expense claim was a result of excusable neglect and, if so, whether the Court should grant Board an extension of time to file an application for payment of her administrative expense claim.

One of the essential functions of the bankruptcy process is to ensure the efficient, "prompt and effectual administration and settlement of the debtor's estate." *Chemetron Corp. v.*

5

*Jones*, 72 F.2d 341, 346 (3rd Cir. 1995) (citing *Katchen v. Landy*, 382 U.S. 323, 328 (1996)).  In Chapter 11 cases, creditors whose claims are listed in the debtor's schedules are not required to file proofs of claim "unless they are scheduled as disputed, contingent, or unliquidated."  Fed. R. Bank. P. 3003(b)(1).  Every other creditor is required to submit their proof of claim prior to the claims bar date set by the court.  Fed. R. Bankr. P. 3003(c)(2).  Similarly, an entity must timely file a request for payment of an administrative expense.  11 U.S.C. § 503(a).  "After the passage of the bar claims date, a claimant cannot participate in the reorganization unless she establishes sufficient grounds for the failure to file a proof of claim."  *Chemetron*, 72 F.2d at 346 (citing *In re Best Products Co.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992)).  Claims and expenses allowed by the Court are entitled to the priority accorded in 11 U.S.C. § 507.

As the United States Bankruptcy Court for the Eastern District of Virginia has held, "[u]pon confirmation of a chapter 11 plan, the debtor is discharged from any debt that arose prior to the confirmation date except as otherwise provided by § 1141(d) of the Bankruptcy Code, the plan, or the order confirming the plan."  *In re US Airways, Inc.*, No. 04-13819-SSM, 2005 WL 3676186, at *2 (Bankr. E.D. Va. Nov. 21, 2005) (citing *In re AM Intern*, 142 B.R. 252 (Bankr. N.D. Ill. 1992)).  As a general proposition, creditors must file a proof of claim and entities seeking payment of administrative expenses must file a request for payment prior to the applicable claims bar date in order to receive any distribution in a Chapter 11 case.  This rule is subject to two important qualifications: (i) the claimant must have been provided constitutionally adequate notice of the applicable claims bar date; and (ii) even when such notice is adequate, the court may allow a late proof of claim or a late request for payment of an administrative claim upon a proper showing of excusable neglect.  *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick*

6

*Assocs. Ltd. P'ship*, 507 U.S. 380 (1993); *City of New York v. New York, New Haven & Hartford R.R. Co.*, 334 U.S. 293 (1953)). The Court will address these two issues in turn.

I

Board alleges that she did not receive constitutionally sufficient notice of the Administrative Claims Bar Date via publication in the *Richmond Times Dispatch* and in the national edition of the *Wall Street Journal*. Board further asserts that notice in this manner deprives her of due process as guaranteed by the Constitution. The Supreme Court of the United Sates announced in *Mullane v. Central Hanover Bank & Trust Co.*, that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950); *see also In re Circuit City Stores, Inc.*, No. 08-35653-KRH, 2010 WL 2208014, at *7 (Bankr. E.D. Va. May 28, 2010) (citing *Mullane*, 339 U.S. at 314) ("In order to satisfy the requirements of due process, notice must be reasonably calculated to apprise interested persons of the pending action.").

"The type of notice that is reasonable or adequate for purposes of satisfying the due process requirement . . . depends on whether a particular creditor is known or unknown to the debtor." *In re J.A. Jones, Inc.*, 492 F.3d 242, 249 (4th Cir. 2007). In order to discharge a known creditor's claim, "actual notice of the bankruptcy filing and applicable bar date is required." *Id.* In contrast, for unknown creditors, "constructive notice—typically in the form of publication—is generally sufficient to pass constitutional muster." *Id.* at 249–50. This Court must determine first whether Board was a known or unknown creditor of the Reorganized Debtors.

"Known creditors . . . include claimants whose identities are actually known to the debtor, as well as claimants whose identities are 'reasonably ascertainable' to the debtor." *Id.* at

7

250 (quoting *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). A creditor is reasonably ascertainable "if the debtor can uncover the identity of that creditor through 'reasonably diligent efforts.'" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983). To make a reasonably diligent effort, the debtor does not need to engage in "impracticable and extended searches," *Mullane*, 339 U.S. at 317, or undertake "a vast, open-ended investigation." *Chemetron*, 72 F.3d at 347. Rather, the debtor's search should focus on "the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." *In re J.A. Jones*, 492 F.3d at 250 (quoting *Chemetron*, 72 F.3d at 347). Conversely, unknown creditors are those claimants "whose identity or claim is wholly conjectural or 'whose interests or whereabouts could not with due diligence be ascertained' by the debtor." *Id.* (quoting *Mullane*, 339 U.S. at 317).

Whether a creditor is known or unknown requires a fact-intensive analysis of "the totality of the circumstances in each case." There is "no bright-line rule to be applied in determining whether a particular creditor is known or unknown." *Id.* In applying *Mullane*'s reasonably diligent efforts analysis, the Court may take into consideration all pertinent facts in making its finding whether or not Board was known to the Reorganized Debtors at the time the Notice of Effective Date was published.

Judge Wilkinson provided a number of factors courts should consider when determining whether a creditor is known or unknown in his concurring opinion in *J.A. Jones*. These factors are: (i) whether "litigation was filed against the debtor prior to the claims-bar date;" (ii) whether "the [creditor] and its attorneys [ever] mentioned to the debtor that the [creditor] might file suit;" (iii) whether there was any "communication between the [creditor] and the debtor of any sort;" and (iv) whether the creditor had any type of "pre-existing relationship with the debtor through

8

contract, correspondence, or course of dealing."[5] *Id.* at 254 (Wilkinson, J., concurring). In applying these four factors in its totality of the circumstances analysis, the Court must additionally consider the costs and burdens associated with serving actual notice." *In re Circuit City Stores, Inc.*, 2010 WL 2208014, at *8.

> In bankruptcy, the court has an obligation not only to the potential claimants, but also to existing claimants and the petitioner's stockholders. The court must balance the needs of notification of potential claimants with the interest of existing creditors and claimants. A bankrupt estate's resources are always limited and the bankruptcy court must use discretion in balancing these interests when deciding how much to spend on notification.

*Id.* (quoting *Vancouver Women's Health Collective Soc. v. A.H. Robins Co., Inc.*, 820 F.2d 1359, 1364 (4th Cir. 1987)).

The Court finds from the totality of the circumstances presented in this case that Board was an unknown creditor at the time the Reorganized Debtors published the Notice of Effective Date. Board argues to the contrary that reasonably diligent efforts on the part of the Reorganized Debtors should have revealed her identity. Board relies on the investigation conducted by the TABC, which was lead by enforcement agent Andrew Norton ("Norton"). Board claims that during the course of Norton's investigation, he provided management of the Tarrant County AMF Bowling Alley with information sufficient to identify her as a creditor. In a deposition taken in connection with this contested matter, Norton stated that he visited the Tarrant County AMF Bowling Alley on three occasions, March 1, 2013, March 15, 2013, and March 23, 2013. During his March 15, 2013 visit Norton claims that he informed the general manager, Rusty Dickinson ("Dickinson") of Board's identity and about the nature of the injuries Board sustained as a result of the January 27, 2013 motor vehicle accident. This information, however, does not

---

[5] Judge Wilkinson noted "that there are few if any cases holding a party to be a known creditor when the creditor" lacks this type of pre-existing relationship with the debtor. *In re J.A. Jones*, 492 F.3d at 254 (Wilkinson, J., concurring).

appear anywhere in the contemporaneous notes Norton kept throughout his Investigation. Similarly, no mention of Board's identity is contained in the detailed written report Norton prepared at the conclusion of his investigation. Norton testified at his deposition that at no point did he ever provide an AMF representative with any other information about Board, such as her date of birth, home address, mailing address, city of residence, state of residence, country of residence, social security number, telephone number, e-mail address, employer, or employer's address. Norton also testified that he never told an AMF representative that Board was considering filing suit against AMF. Despite these facts, Board argues the Reorganized Debtors had more than ample information and documentation regarding Board's claim to make her a known creditor. This Court cannot find from these facts that Board was a known creditor of AMF.

Board did not file the State Court Action until March 18, 2014, which was more than seven months after the Administrative Claims Bar Date. Thus, the first factor cited in the *J.A. Jones* concurrence, whether "litigation was filed against the debtor prior to the claims-bar date," weighs in favor of the Reorganized Debtors. *In re J.A. Jones*, 492 F.3d at 254 (Wilkinson, J., concurring). The second and third factors spelled out in the concurring opinion weigh in favor of the reorganized Debtors as well. There is no evidence that Board or any of her attorneys directly contacted AMF prior to the Administrative Claims Bar Date to advise that the Movant might file suit. In fact, there was no "communication between the [Movant] and the debtor of any sort" prior to the Administrative Claims Bar Date. *Id.* The only communication with AMF that supposedly revealed Board's identity had to have come indirectly from Norton's interaction with Dickinson during the TABC Investigation. Based on the omission of any reference to Board in Norton's written report, it is highly speculative whether Norton's passing comment to

Dickinson made AMF aware of Board's identity. Even assuming that Norton's comment did make Dickinson aware of Board's name, that still would not be sufficient to satisfy either one of the second or third factors set forth in *J.A. Jones*. Norton clearly indicates in his testimony that he did not inform Dickinson that Board intended to file suit. There was no reason for Dickenson, who is not a lawyer, to have concluded that the Tarrant County AMF Bowling Alley might have any liability to Board as a result of an automobile accident caused by a third party. AMF cannot be charged with having knowledge of Board's status as a creditor based solely upon a TABC enforcement agent mentioning Board's name to a general manager of one of its locations. Had Norton delivered a letter to Dickenson identifying Board and describing her claim against AMF, or had he included a description of Board in his written report, this analysis may result in a different conclusion. The Court, however, does not have any such evidence before it and cannot find that Board has satisfied either of these two factors.

The fourth *J.A. Jones* factor is whether the creditor had any type of "pre-existing relationship with the debtor through contract, correspondence, or course of dealing." *Id.* This factor also lends itself to an analysis of whether the Reorganized Debtors made reasonably diligent efforts to uncover Board's identity. The Court has no evidence before it that Board had any type of contractual relationship with the Reorganized Debtors. Additionally, there was no correspondence between the parties, nor did the parties have any established course of dealing. The Court also has not heard any evidence that Board was ever a customer of AMF. Board's name was not present anywhere in the Reorganized Debtors' books and records prior to the Administrative Claims Bar Date.[6] *See In re Envirodyne Indus. Inc.*, 214 B.R. 338, 348 (N.D. Ill.

---

[6] It should be noted that the TABC did not provide the Reorganized Debtors with a copy of the police report pertaining to the January 27, 2013 accident until October 2013, roughly two months after the Administrative Claims Bar Date, at which point the police report conceivably became a part of the Reorganized Debtors' records. Additionally, Norton makes clear in his deposition testimony that he did not make Dickinson or any other AMF

11

1997) ("There was no possible way for appellee Clear Shield to ever run across the names of appellants Eisenberg and Servall since they were never customers of appellee Clear Shield and therefore there was no reason to conclude that they should be considered creditors.").

The Supreme Court has made it clear that debtors need not undertake "impracticable and extended searches" to identify every single possible creditor. *Mullane*, 339 U.S. at 317. In the Fourth Circuit, efforts beyond a careful investigation of a debtor's own books and records generally are not required. *In re J.A. Jones*, 492 F.3d at 250. The Court finds no reason why an investigation beyond the Reorganized Debtors carefully reviewing their own books and records to identify creditors would be warranted in this case. Thus, the Court finds that no pre-existing relationship existed between Board and the Reorganized Debtors, and that the Reorganized Debtors made reasonably diligent efforts to locate creditors. Board is unable to satisfy any of the four *J.A. Jones* factors and has not established that the Reorganized Debtors failed to make reasonably diligent efforts to uncover Board's identity.

The Court must balance "the needs of notification of potential claimants with the interest of existing creditors and claimants" as part of its totality of the circumstances analysis. *In re Circuit City Stores, Inc.*, 2010 WL 2208014, at *8 (internal quotation marks omitted) (quoting *Vancouver Women's Health Collective*, 820 F.2d at 1364). One of the most valuable aspects of the bankruptcy process is the "prompt and effectual administration and settlement of the debtor's estate." *Chemetron*, 72 F.2d at 346 (citing *Katchen*, 382 U.S. 328). Requiring the Reorganized Debtors to engage in the type of large, sweeping investigation that would have been required to ascertain Board's identity "would have involved significant time and expense by a company already in a dire financial condition." *In re Circuit City Stores, Inc.*, 2010 WL 2208014, at *8.

---

representative aware of the police report during any of his three March 2013 meetings. Both of these facts lend further support to the finding that Board's identity was not a part of the Reorganized Debtors' books and records as of the time the Notice of Effective Date was published.

12

Requiring such a search to be undertaken in this case would be to the detriment of all existing creditors and the bankruptcy process as a whole. For this reason, the Court finds that the balance of needs between the notification of potential claimants and the interests of the existing creditors weighs in favor of finding that Board was an unknown creditor, and thus notice by publication was appropriate under the facts of this case.

Finally, Board urges this Court to find, contrary to the Supreme Court's holding in *Mullane* and the Fourth Circuit's holing in *J.A. Jones*, that notice to unknown creditors served via publication in a nationally circulated newspaper is no longer sufficient to satisfy due process. This Court must disagree with the Movant's contention. *Mullane* instructs that notice through publication satisfies due process as to unknown creditors because "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane*, 339 U.S. at 1950. *J.A. Jones* likewise makes clear that "where a creditor is unknown to the debtor, constructive notice—typically in the form of publication—is generally sufficient to pass constitutional muster." *In re J.A. Jones, Inc.*, at 249–50. These cases establish that notice served to unknown creditors through publication is almost always reasonably calculated, as it was here, to provide interested parties with notice of an action and to provide that party with an opportunity to be heard. With the widespread use of computers, smartphones, and tablets, newspapers are more readily available to consumers today than perhaps at any point in history—and certainly more easily accessible than they were in 1950, when the Supreme Court decided *Mullane*. If newspapers are no longer a constitutionally sufficient means by which to provide notice to unknown creditors; that is not an issue for this Court to decide.

13

The Court finds that Board was an unknown creditor as of the time the Notice of Effective Date was published in the *Wall Street Journal* and the *Richmond Times Dispatch* and that notice via publication was constitutionally sufficient to apprise Board of the Administrative Claims Bar Date and the proper procedure for filing administrative claims. Therefore, the Administrative Claims Bar Date prevents Board from now asserting her untimely-filed administrative expense claim, unless she is able to prove her late filing of this claim was due to excusable neglect.

II

Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that a when a party fails to act within a time specified by an order of the bankruptcy court, the court is permitted to allow the party to act after this time period has expired if the failure to act was the result of "excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The determination of whether or not a party's neglect is excusable is one largely based in equity. The Supreme Court, in *Pioneer Investment Services Co. v. Brunswick Associates, L.P.*, established a number of factors courts must weigh when undertaking this analysis: (i) "the danger of prejudice to the debtor," (ii) "the length of the delay and its potential impact on judicial proceedings," (iii) "the reason for the delay, including whether it was within the reasonable control of the movant," and (iv) "whether the movant acted in good faith." 507 U.S. at 395; *see also In re US Airways, Inc.*, 2005 WL 3676186, at *7. The burden of proving excusable neglect rests on the creditor seeking an extension of the bar date. *In re US Airways, Inc.*, 2005 WL 3676186, at *7. The United States Bankruptcy Court for the Eastern District of Virginia has held that excusable neglect "is not easily demonstrated, nor was it intended to be." *Id.* (internal quotation marks omitted) (quoting *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th

14

Cir.1996)). Applied to the facts of this case, the Court finds that Board has failed to meet her burden of proof and is not permitted to file her administrative expense claim after the Administrative Claims Bar Date.

Beginning with factor one—the danger of prejudice to the debtor—the Court finds that allowing Board to file this administrative expense claim now would have an extremely prejudicial impact on the Reorganized Debtors. Likewise, under factor two, the length of the delay that would transpire as a result of permitting Board to file her administrative expense claim at this time would be significant. AMF provided notice of the Administrative Claims Bar Date to all unknown creditors via publication. Upon passage of the bar date, the Reorganized Debtors reasonably believed that all claimants had come forward. This allowed the Reorganized Debtors to accurately calculate their outstanding liabilities to creditors so that they could effectively begin to reorganize. *See id.* "If the court were to allow [Board] to file a late claim solely because [she was] unaware of the bankruptcy filing, it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward and assert a previously unknown claim." *Id.* At this stage in the case, distribution to unsecured creditors is about to commence. According to the records of claims agent Kurtzman Carson Consultants LLC, there are currently over 1,000 general unsecured claims filed in this case awaiting distribution. In the Chapter 11 cases, "the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization." *Pioneer*, 507 U.S. at 389 (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527–28 (1984)). If the Court were to allow Board to litigate her personal injury claim at this point, the administration of this bankruptcy case would be delayed by several months, at a minimum, to the detriment of all the other creditors.

The balance of equities strongly supports a finding that AMF's reorganization will be far better served by not further delaying distribution to over 1,000 general unsecured creditors in favor of an unliquidated personal injury claim of one creditor.

Next, the reason for the delay also weighs against Board. The date upon which Board chose to file the State Court Action was entirely within her control. Board waited more than a year after the automobile accident to commence suit. Board's counsel was then given actual notice of AMF's bankruptcy case when the Reorganized Debtors filed their Motion to Dismiss the State Court Action. Board, however, waited an additional six months to file the Motion at bar; and she filed the Motion then only after the judge presiding over the State Court Action instructed her to do so. The resulting delay created a gap of more than one-year between the Administrative Claims Bar Date and the filing of this Motion. This one-year delay stands in stark contrast to cases where courts have found the length of delay to be acceptable. For example, in *Pioneer* the delay was only twenty days. *Id.* at 385. In *In re Quartercall Communications*, the United States Bankruptcy Court for the Eastern District of Virginia allowed a claim to be filed late where the creditor acted just six days after the bar date. No. 95-15090-AM, 1996 WL 910910, at *6 (Bankr. E.D. Va. May 15, 2009). In contrast, in the *US Airways* decision the delay was nearly seven months, and the court found that allowing a claim to be filed after such a delay would be detrimental to the case. *In re US Airways, Inc.*, 2005 WL 3676186, at *8. The case at bar is far more analogous to the delay that existed in *US Airways* than those presented in *Pioneer* and *Quartercall*. Thus, the Court finds that Board is unable to satisfy the third element necessary for establishing excusable neglect.

Board did not offer any evidence addressing the good faith standard set forth in *Pioneer*. While the Court does not find that Board has proceeded in bad faith, Board clearly has failed to

16

satisfy any of the other three factors set forth in *Pioneer*. Accordingly, Board has not met her burden of proving excusable neglect. Board's request for an extension of time within which to make an application for payment of her administrative expense claim is denied.

## Conclusion

The Court finds that Board was an unknown creditor as of the time the Reorganized Debtors published the Notice of Effective Date. As an unknown creditor, notice by publication was constitutionally sufficient to apprise Board of the Administrative Claims Bar Date and the procedure for filing her administrative expense claim. Because notice was constitutionally sufficient in this case, Board would only be entitled to file her administrative expense claim at this time if her failure to file this claim in a timely manner was due to excusable neglect. Board has failed to establish the essential elements of excusable neglect and is not entitled to an extension of time in which to file her administrative expense claim.

A separate order shall issue.

ENTERED: 11/18/14 _____

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: 11/18/14

17